IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARK CHERICHETTI,            :
                        Plaintiff,      :

v.                                      :     Civ. No. 11-427-RGA

PJ ENDICOTT COMPANY,      :
                   Defendant.     :

---

Mark Cherichetti, South Daytona, Florida; pro se Plaintiff.

Ronald George Poliquin, Esq.,[1] Law Firm of Ronald G. Poliquin P.A., Dover, Delaware; Counsel for Defendant.

**<u>MEMORANDUM OPINION</u>**

October 26, 2012
Wilmington, Delaware

---

[1] Mr. Poliquin was suspended from the practice of law subsequent to the briefing in this case.

*[signature: Richard G. Andrews]*

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Plaintiff Mark Cherichetti, who proceeds pro se, filed this lawsuit alleging that Defendant PJ Endicott Company underpaid him for regular time and failed to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* In addition, Plaintiff alleges that the Defendant withheld, but failed to pay, state and federal taxes, social security, and medical benefits.[2] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Before the Court is Defendant's Motion for Summary Judgment. (D.I. 29). The Court may grant a motion for summary judgment only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The Court denies the motion for the reasons that follow, which may be summarized as, there are disputed material facts about whether Plaintiff was an employee.

**I.    Factual Background**

At the summary judgment stage of a proceeding, the facts are viewed in the light most favorable to Plaintiff, the non-moving party. Peter James Endicott is the principal

---

[2] An employer is required to withhold income taxes as well as the employee portion of social security and medicare taxes from an employee's wages. *See* 26 U.S.C. §§ 3101(a), 3101(b), 3102(a), 3402(a). An employer withholds the taxes as "a special fund in trust for the United States", 26 U.S.C. § 7501(a), and therefore, the relationship created by these statutes, if any, is between the government and the employer, not the employer and the employee.

1

of Defendant, a company engaged in the business of installing and servicing residential and commercial heating, ventilation, and air conditioning ("HVAC") systems. (D.I. 30, ex. 1 at ¶¶ 1, 2.) Defendant does not engage in the business of electrical services. *Id.* at ¶ 3. Endicott was retained by G-W Management LLC as an independent contractor to install HVAC for the construction of a United States Post Office facility in New Castle, Delaware ("the project"). *Id.* at ¶ 4. Because the project required electrical services, Plaintiff, who is an electrician, agreed with the Defendant that the Plaintiff would perform the electrical work. *Id.* at ¶¶ 5-6.

According to Plaintiff, his employment with Defendant began on October 13, 2008, and ended on June 1, 2009 when the project concluded.[3] (D.I. 30 at exs. 2, 6). During this time, Plaintiff worked on the project five to six days a week, and sometimes even seven, but he did not clock in at work. *Id.* at exs. 2, 7. In addition, Plaintiff had worked on other projects with Defendant on an as-needed basis. *Id.* at ex. 6. It was Plaintiff's understanding that once the project ended, the pay ended. *Id.* at ex. 9. Plaintiff's main residence is in Florida, and he planned to return there after the job. *Id.* at ex. 8.

Plaintiff was given a time log book by a G-W employee to keep track of his hours. (D.I. 21; D.I. 30, ex. 2.) This G-W employee supervised Plaintiff while he worked on the project. *Id.* at exs. 2, 6. Endicott came by the job about once a month, and Plaintiff also talked to him "off and on." *Id.* at exs. 6-7.

---

[3] Suit was filed May 16, 2011. FLSA cases generally have a two-year statute of limitations. (There is no allegation of willfulness). Thus, it may be that most of the Plaintiff's Complaint is barred by the statute of limitations, which was asserted as an affirmative defense. That issue, however, is not before the Court.

Plaintiff was paid by check, but did not receive payment on a set schedule. Plaintiff did not discuss overtime pay with Endicott.

When Plaintiff received his first paycheck on October 28, for $1,158.23, it was not in the form of a normal pay stub with deductions for taxes and insurance and he did not know the number of hours for which he was actually paid. (D.I. 30, ex. 9.) Plaintiff was paid with checks issued from Defendant's bank account and they were made payable to either Mark Cherichetti or Mark Cherichetti Electric. (D.I. 34.) The record reflects that checks were made payable to Mark Cherichetti in 2008 on September 19, October 28, November 4 and 21, and December 23, 2008; and in 2009 on January 6 and 30, and February 9. (D.I. 34.) Checks were made payable to Mark Cherichetti Electric in 2009 on February 23, April 15, 20, May 29, and August 3. *Id.* In addition, Defendant issued a check on January 28, 2009 to Ford Credit for "Mark." *Id.* Endicott testified that, at the end, the checks were made payable to Mark Cherichetti because he "became a problem." (D.I. 33 at 27.)

According to Plaintiff, he did not make any decisions regarding the electrical work, all decisions were made by G-W and Defendant, and he had no control over anything. (D.I. 30 at exs. 7, 10). Plaintiff supervised two employees on the postal facility job; Robyn Cherichetti and Ben Garheart. *Id.* at ex. 12. Plaintiff asked Endicott to hire Garheart because he needed more help. *Id.* When Garheart did not work out, Endicott told Plaintiff to let him go. *Id.*

3

Plaintiff was not the only electrician on the job. (D.I. 30, ex. 6.) Another individual performed electrical work and also worked on the fire alarm and security system work. *Id.* Plaintiff is not sure who hired the other electrician. *Id.*

On certain occasions, Plaintiff would buy basic materials for the project at an electrical supply house where Defendant had an account. (*Id.* at ex. 7.) No approval was necessary. *Id.* at ex. 8. Plaintiff drove his own vehicle to work and mostly used his own tools. *Id.* at ex. 9. In addition, he used his own trailer to store items for the postal job. *Id.* at ex. 10.

## II. Discussion

Plaintiff proceeds pro se. His complaint contains scant allegations, but attached to it are numerous exhibits. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Defendant moves for summary judgment on the grounds that Plaintiff never acted, nor was considered, its employee for FLSA purposes. Plaintiff opposes the motion and filed an unconventional opposition to the motion, an apparent rough-draft transcription of dictation by his former attorney. (*See* D.I. 33.)

To state a claim under the FLSA, a plaintiff must allege: (1) he is an employee of the defendant; (2) that his "work involved some kind of interstate activity[;]" and (3) the approximate number of hours worked for which he did not receive these wages. *See Scott v. Bimbo Bakeries, USA, Inc.*, 2012 WL 645905, *2 (E.D. Pa. Feb. 29, 2012).

4

Plaintiff's employment status is a legal conclusion. *See Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991).

There is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA. *See id.* at 1293. Under the FLSA, an independent contractor is not protected; the FLSA applies only to employees of covered employers. *See* 29 U.S.C. § 201; *see also Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1386 (3d Cir. 1985). "[O]f all the acts of social legislation, the Fair Labor Standards Act has the broadest definition of 'employee.'" *Donovan*, 757 F.2d at 1382. It defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and broadly defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1). In light of this "expansive definition[,]" the Third Circuit has developed the following six-factor test to determine whether a plaintiff is an "employee" under the FLSA: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending on his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *See Martin*, 949 F.2d at 1293. In considering these factors, the court should also look to the totality of the circumstances and consider whether "as a matter of economic reality, the individuals are 'dependent upon the business to which they render service.'" *Id.* As will be

5

discussed, there are either genuine issues of fact or insufficient evidence for the Court to determine as a matter of law whether Plaintiff was an employee or an independent contractor.

Control. Courts should consider "the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010); *see also Donovan*, 757 F.2d at 1383 (analyzing to what degree putative employees were supervised and subject to hiring and firing). This factor may weigh against finding employee status when the putative employer exercises only minimal control over the putative employee. *See id.*

Defendant asserts that Plaintiff was a subcontractor hired to perform electrical work, that he set his own hours, and that he had full control over his work product and assistants on the job. Conversely, Plaintiff states that he was required to keep a time log of the hours worked, that he was supervised by Endicott and GW's employee (Russian), that there were other electricians working on the project and it was unknown to him who hired them, and that when he requested electrical workers to assist him Endicott hired the individuals and fired one individual who did not work out. In addition, Plaintiff indicates that he made no decisions regarding the electrical work.

Opportunity for Profit or Loss. The opportunity for profit or loss factor centers on whether Plaintiff had meaningful opportunities for profit or any significant risk of financial loss, depending upon his managerial skill. *See Martin*, 949 F.2d at 1294. This factor may be present for a worker whose earnings are tied to his performance or when the putative employee makes a capital investment that may be lost if the business does not

6

succeed. *Id.* Plaintiff testified that he was told he would receive the going federal rate on the postal job, and that he would be paid every week or bi-weekly. This suggests that there were no meaningful opportunities for profit or any significant risk of financial loss depending upon the use of his managerial skill. Nor is there is any evidence that Plaintiff made any capital investment in the project or in Defendant. Defendant disputes that Plaintiff was told he would be paid an hourly rate and indicates that instead, Plaintiff was told he would receive payments based upon draws received from the contract. The record reflects that Plaintiff was paid varying amounts, some checks seemingly based upon an hourly rate and other checks seemingly based upon a contract draw.

Investment in Equipment and Employment of Workers. The record reflects that, for the most part, Plaintiff drove his truck to work and used his personal equipment and trailer for storage. "Courts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status." *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998). When viewing this factor, it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation. *See Dole v. Snell*, 875 F.2d 802, 810 (10th Cir. 1989) (comparing defendants' relative investment as cake decorators with employer's overall investment in bakery business); *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987) (comparing migrant workers' capital investment with employer's overall investment in pickle-farming operation). The record reflects that Plaintiff used his own equipment while working on the project, but the record is silent with regard to Defendant's investment in its overall operation.

7

Special Skill. The fourth factor asks whether the service rendered by the alleged employee requires a special skill. Unskilled workers are more likely to be deemed employees because "[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Martin*, 949 F.2d at 1295. Nonetheless, all skilled workers are not independent contractors. In ascertaining worker status, courts should consider whether the individual has "'the skills necessary to locate and manage discrete work projects characteristic of independent contractors, or whether the skills are of the task-specific, specialized kind that form a piece of a larger enterprise, suggesting employee status.'" *Li v. Renewable Energy Solutions, Inc.*, 2012 WL 589567, *9 (D.N.J. Feb. 22, 2012).

It is undisputed that Plaintiff provided electrical work for the project, as did other individuals who worked on the project. However, if the electrical services Plaintiff provided were not discrete work projects, but formed a specific part of larger work for Defendant, this factor may favor a finding that he is an employee. This fact is unknown.

Permanence of the Working Relationship. Courts should consider the exclusivity, length and continuity of the relationship when considering the degree of permanence of the working relationship. *Martin*, 949 F.2d at 1295. Under the permanence prong, the duration of the working relationship is not as significant as the number of hours worked and the exclusivity of the working arrangement. *Donovan v. Gillmor*, 535 F.Supp. 154, 162-63 (N.D. Ohio 1982). For example, "[m]any seasonal businesses necessarily hire only seasonal employees, [and] that fact alone does not convert seasonal employees into seasonal independent contractors." *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987).

8

It is undisputed that Plaintiff was hired for a specific period, until the completion of the project. The record also reflects that Defendant hired Plaintiff to work on other projects on an as-needed basis. Although Plaintiff exhibits characteristics generally typical of independent contractors because of the short duration of his employment, it may be that his employment is due to the nature of construction work. *See Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) (rig welders who rarely worked more than two to three months in natural gas pipeline construction characterized as "permanent and exclusive for the duration of" the particular job for which they were hired.).

<u>Integral Part of Business</u>. The sixth factor looks to whether the services rendered by the Plaintiff were an integral part of Defendant's business. Defendant states that he does not engage in the business of electrical services. While this may be true, it appears from the record, that Plaintiff's electrical work was an important and integral component of the work Defendant was contractually obligated to perform for completion of the project.

Finally, the economic realities point to an employee-employer relationship. While not clear, it appears that during the relevant time period, Plaintiff's sole source of income was provided by Defendant. There is no indication that Plaintiff had other jobs. He relied entirely on Defendant for his income and livelihood. The overarching question of the economic realities test is whether Plaintiff was economically dependent upon the Defendant or was in business for himself. *See Schultz v. Capital Int'l Sec.*, Inc., 466 F.3d 298, 304 (4th Cir. 2006).

9

The parties have provided contradictory evidence on almost every one of the six factors considered by the Court, and the contrasting evidence requires a credibility determination, which is inappropriate at the summary judgment stage.  Viewing the evidence in the light most favorable to Plaintiff as the nonmoving party, the Court concludes that there exist genuine issues of material fact as to several elements of the six-factor employee test.  Thus, the Court concludes that for the purpose of summary judgment, Defendant has failed to set forth sufficient undisputed facts to support the legal conclusion that Plaintiff is not an employee.

For the above reasons, the Court will deny Defendant's Motion for Summary Judgment.

An appropriate order will issue.